UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R. SCOTT THOMPSON, on his behalf and on behalf of his marital community,<br><br>  Plaintiff,<br><br>  v.<br><br>FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK, N.A.,<br><br>  Defendant. | NO. CV-12-5018-SAB<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 25. A telephonic hearing was held on the motion on July 22, 2014, in Yakima, Washington. Plaintiff was present in the courtroom and represented telephonically by Charles Greenberg. Defendant was represented telephonically by Kimberley McGair.

**MOTION STANDARD**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Anderson*, 477 U.S. at 250.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### FACTS

The following facts are presented in the light most favorable to Plaintiff, the non-moving party.

Plaintiff bought a home in December, 1998 and Defendant financed the purchase. Plaintiff signed a Promissory Note, secured by a deed of trust. The amount of the loan was $94,543. The payments on the loan included principle and interest, plus taxes and insurance.

In 2004, Plaintiff fell behind in making his mortgage payments. ECF No. 32. A notice of default was posted at the house. *Id.* After getting this notice, he received a Notice of Foreclosure. *Id.* Consequently, Plaintiff filed for a Chapter 13

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

bankruptcy in February, 2005, and submitted a Chapter 13 Plan. ECF No. 36. Plaintiff then made his monthly mortgage payment of $877.61 to Daniel Brunner, the Bankruptcy Trustee, who distributed the payment to Defendant. *Id.* The bankruptcy records reflect that, at the beginning of the Plan, Plaintiff owed $86,967.01 on the mortgage. *Id.*

A review of the payment history indicates that, at times, Plaintiff fell behind on his payments but would catch back up. For instance, in October, 2005, he made a $239.12 payment, but then made this up with a $1,394.13 payment in December, 2005. ECF No. 36. In February, 2006, and April, 2006, Plaintiff made payments of less than $877.61, but again made up the arrears at a later date. *Id.* He failed to make any payments in May, July, August, 2006; January, June, October, 2007; April, July, August, October, December, 2008; January and March, 2009. *Id.* The missed payments were then caught up by subsequent payments. For instance, Plaintiff made a $2,435.61 payment in November, 2007, and a $3,940.06 payment in November, 2008. *Id.* According to the Bankruptcy Trustee, Plaintiff paid $43,646.08 through the course of his Chapter 13 Bankruptcy Plan. *Id.*

Because of the missed payment in March, 2009, Plaintiff's bankruptcy case was dismissed. Plaintiff filed a motion for reconsideration, and the case was reopened. On April 20, 2009, Mr. Brunner issued a check to Defendant for $2,772.50, which included $2,585.14 of the current mortgage payment and $187.36 of pre-petition mortgage arrearage. ECF No. 31-1, Ex. D. Zoila Chavez, Bankruptcy Specialist for Defendant, returned the check with an accompanying letter, stating she was returning the check because the case was dismissed. ECF No. 31-1, Ex. A.

Mr. Brunner responded by reissuing another check and informing Defendant that the Order of Dismissal had been vacated and Plaintiff's Chapter 13 Bankruptcy Case was complete. ECF No. 36. According to Mr. Brunner's records, he reissued the check four times: April 20, 2009, May 5, 2009, May 21, 2009, and

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

June 9, 2009. In his correspondence accompanying the check, he noted that he believed the payment would bring Plaintiff's home loan post-petition current through April, 2009. The record indicates the fourth re-issued check was posted on June 23, 2009. ECF No. 31-1, Ex. D.

In the meantime, on May 22, 2009, Defendant sent Plaintiff a Notice of Default, indicating it would be initiating foreclosure proceedings. ECF NO. 31-1, Ex. B.

On June 18, 2009, Terry Preszler, Plaintiff's bankruptcy attorney, sent a cashier's check for $1,758.04 to McCarthy & Holthus, LLP, Atttn. Colleen Campbell.[1] ECF No. 31-1, Ex. E. A follow-up fax was sent by Mr. Preszler to Ms. Campbell, in which he explained that the $1,758.04 was for the May and June, 2009 payments. ECF No. 31-1, Ex. F. It does not appear this check was credited to Plaintiff's account.

On June 23, 2009, Defendant sent a letter to Mr. Preszler, indicating it had been notified of a bankruptcy filing by Mr. Thompson, case no. 05-00903, and advising of alternatives that may be available to resolve the default on their account. ECF No. 31-1, Ex. G.

This caused Plaintiff to become confused as to the status of his loan. On July 5, 2009, Mr. Preszler's office sent Ms. Campbell "a letter and borrowers financial statement." ECF No. 31-1, Ex. G. Ms. Ahlers, the paralegal, asked Ms. Campbell what was the status of the loan at this time. *Id*.

In August, 2009, it appears that Plaintiff was able to speak with one of Defendant's employee, and as a result sent some correspondence to Dallas, Texas. On August 14, 2009, Plaintiff wrote a letter to Diana, who appears to an employee of Defendant. ECF No. 31-1, Ex. I. It stated:

> We are enclosing the documents you requested. The Discharge of the Bankruptcy on 7/17/09, the new mortgage payment notice and

---

[1] It appears this law firm represented Defendant in the bankruptcy proceedings.

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

> annual escrow review, we also paid the irrigation payment for the year in the amount of $272.11 on 8/14/2009. As soon as we get a statement of the balance we need to pay for our loan we will send payment. We also request that we get a monthly statement to pay. By our calculation the bankruptcy court has paid First Horizon Home Loan $43,646.08 & $3,022.00. The original note was $86,967.01. We are very anxious to get this matter resolved so that from here on our payments will be on time! This letter and documents are being faxed today as requested.

*Id.*

Attached to the fax were the Notice of Discharge from the Bankruptcy Court; a New Mortgage Payment Notice and Annual Escrow Review dated July 7, 2009 that stated the current monthly payment was $879.02 and the new payment of $947.99 would be effective 09/01/09; and a receipt for the irrigation payments. *Id.*

Plaintiff made payments to McCarthy & Holthus, LLP. in August, 2009[2], September, 2009[3], and October, 2009[4]. But the correspondence he was receiving from Defendant did not reflect that these payments were being credited to his account. Instead, Defendant continued to send statements that indicated that Plaintiff was behind on his payments. On September 16, 2009, Defendant sent Plaintiff an account summary that indicated he was now $5,948.24 in arrears. ECF No. 31-2, Ex. M. On October 16, 2009, Defendant issued a Mortgage Account Statement that indicated Plaintiff was now $6,949.40 in arrears. ECF No. 31-2, Ex. P. Moreover, on October 21, 2009, Defendant sent Plaintiff a notice that he was in arrears, and gave him a phone number to call if he wanted to avoid foreclosure. ECF No. 31-2, Ex. Q. Then, on November 27, 2009, Defendant sent Plaintiff a notice that it had forwarded the necessary required documents to its attorney to

---

[2]ECF No. 31-2, Ex. K.
[3]ECF No. 31-2, Ex. N.
[4]ECF No. 31-2, Ex. T.

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 5

initiate foreclosure proceedings. The attorney listed was McCarthy & Holthus. Another notice issued the same day informing Plaintiff of the following:

> Foreclosure proceedings will result in your home being sold at public auction and your family being forced to vacate the premises. This delinquency and foreclosure action will be noted on your credit records and may effect your ability to obtain future loans.

ECF No. 31-2, Ex. R.

On December 8, 2009, Plaintiff received a Notice of Default from Quality Loan Service Corporation of Washington. ECF No. 31-2, Ex. Y. At some point during this time, Notices of Default were posted on Plaintiff's home.

Because it was not clear to Plaintiff or his bankruptcy attorney why his payments were not being credited and why he was receiving default notices when he was making payments to McCarthy & Holtus, they attempted on a number of times to get an update on the status of the loan, payment history, or an accounting so Plaintiff could verify the amounts owing and due. ECF Nos. 31-1, Exs. C, F, G; 31-2, Exs. L, O, Q, S.

Finally, in December, 2009, the payment problem was identified. On December 15, 2009, Teresa Fauria from McCarthy & Holthus, LLP sent an email to the Preszler Law office indicating that it figured out it was sending the checks to the incorrect address and Defendant never received or applied the payments. ECF No. 31-2, Ex. T. She asked that Plaintiff put stop payments on the August and September, 2009 checks. *Id.* She also indicated that Defendant received a check for $948.23, which was dated on October 7, 2009. *Id.* Ms. Fauria offered to have the law firm reimburse any overnight charges, and any costs for the requested stop payments. *Id.* Plaintiff complied and sent a cashier's check for $1,758.04. ECF No. 31-2, Ex. Y.

This did not clear up the confusion, however, because the parties disagreed as to the amount that needed to be paid to get the loan up to date. Because of the

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 6

misdirected payments, Plaintiff was charged late fees and attorneys' fees that he believed he should not have to pay. His bankruptcy attorney completed an accounting and determined that he owed $106.24. Plaintiff sent a check for this amount, and Defendant returned the check, indicating that the amount was insufficient to reinstate the loan. ECF No. 31-2, Ex. BB. It also indicated that the loan has been referred to McCarthy & Holthus for foreclosure. *Id.*

On December 22, 2009, Mr. Preszler sent a Formal Notice of Dispute to Quality Loan Service Corporation of Washington in which he explained that the loan was defaulted due to the attorneys' error in sending the payments to the wrong address. ECF No. 31-2, Ex. Y. By March, 2010, Mr. Preszler had not received a response from the Bank. ECF No. 32-1, Ex. BB.

According to a July 28, 2010 email from Courtney Pybas, paralegal for Quality Loan Services, to Craig Walker, Plaintiff's attorney, the foreclosure action was placed on hold pending resolution of the accounting issues. ECF No. 32-1, Ex. BB. The September 10, 2010 sale date was cancelled. *Id.* Sometime in mid-2011, Plaintiff received an accounting. ECF No. 32-1. However, it did not make any sense to him so he retained a credit counselor who tried to communicate with the bank and he submitted a loan modification to the bank. The parties have been unable to resolve their dispute, and Plaintiff filed suit in Benton County Superior Court. Defendants removed the action to the Eastern District of Washington.

## PLAINTIFF'S CLAIMS

In his Complaint, Plaintiff asserts eight claims: (1) predatory lending/inappropriate lending violations; (2) bad faith/predatory lending practices; (3) fraud in misrepresentation; (4) unconscionable behavior; (5) breach of good faith; (6) violation of the Consumer Protection Act; (7) infliction of emotional distress; and (8) specific performance.

The Court finds that Plaintiff has not met his burden of establishing genuine issues of material fact and Defendant is entitled to judgment as a matter of law

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

with respect to the following claims: (1) predatory lending/inappropriate lending violations; (2) bad faith/predatory lending practices; (3) fraud in misrepresentation; and (4) Consumer Protection Act violations. As such, the Court grants summary judgment in favor of Defendant on these claims.

Defendant argues that summary judgment is appropriate because the only remedy available to Plaintiff is reinstatement of the loan. This position, however, ignores Plaintiff's claims for outrage (unconscionable behavior); violation of good faith and fair dealing; and negligent infliction of emotional distress. For these claims, the facts viewed in the light most favorable to Plaintiff show that he was making payments toward his mortgage, yet Defendant refused to credit those payments. Instead, Defendant took steps to foreclose on his house, even though Plaintiff took significant steps to communicate with Defendant over the disputed payments.

In its briefing, Defendant maintains that Plaintiff was in default by May, 2009. A reasonable jury could conclude, however, that to the extent Plaintiff was in default, it was because Defendant refused to accept payment from the Bankruptcy Trustee. Under that scenario, a reasonable jury could infer it would have been pointless to pay the May, 2009 payment until the April, 2009 payment was resolved. The facts bear this out. Shortly after Defendant accepted the Trustee payment, Plaintiff made the May and June, 2009 payments. Notably, however, it does not appear that Defendant properly credited the payments.

The record supports a conclusion that Defendant was proceeding with foreclosure at the same time it was rejecting payments from the Bankruptcy Trustee, even after the Trustee notified it at least three times that the bankruptcy had been reinstated. Moreover, as a creditor and participant in the bankruptcy proceedings, the Court is confident Defendant received notice from the Bankruptcy Court that the dismissal was vacated; it would have been put on notice to accept the payments, regardless of whether the Trustee notified it that this was

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

the case. There is nothing in the record to suggest why Defendant failed to accept the payments. A reasonable jury may infer that Defendant was negligent in handling the Trustee's and Plaintiff's payments. Or, it may infer that Defendant intentionally refused the payments so it could foreclose on Plaintiff's home. A reasonable jury may conclude that having a Notice of Default posted on a house, even though the homeowner was making payments toward the mortgage, would cause emotional distress.

      Consequently, a reasonable jury could find as outrageous Defendant's conduct in rejecting payments at the same time it was proceeding with foreclosure. Throughout the bankruptcy, Plaintiff paid over $40,000 to Defendant. Yet, as Plaintiff was on the verge of completing his bankruptcy plan, Defendant refused to accept the payment and instead, proceeded to foreclose on the property, including posting Notices of Default on Plaintiff's house.

      Moreover, a reasonable jury could find that Defendant may have breach its covenant of good faith and fair dealing when it failed to credit Plaintiff's mortgage payments and continued to threaten foreclosure, especially in light of the efforts Plaintiff and his bankruptcy attorney took to alert Defendant to the problem. As a mortgage lender, Defendant has a duty of good faith and fair dealing to accurately account for payments made on the mortgage, and not reject the payments in order to proceed with foreclosure. Whether this happen is a question for the jury to decide.

      Finally, it will be up to the jury to determine whether Plaintiff's severe anxiety, asthma, nervousness, depression, fear, and extreme emotional distress were caused by Defendant's actions.

      Accordingly, **IT IS HEREBY ORDERED:**

      1. Defendant's Motion for Summary Judgment, ECF No. 25, is **GRANTED**, in part, and **DENIED**, in part.

///

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

1     **IT IS SO ORDERED.** The District Court Executive is hereby directed to
2 file this Order and provide copies to counsel.
3     **DATED** this 23rd day of July, 2014.



                STANLEY A. BASTIAN
                United States District Judge

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10